**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRADLEY L. BRADFORD, | ) | CASE NO. 1:19-cv-00817 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| BRANDESHAWN HARRIS, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Bradley L. Bradford (Petitioner or Bradford), challenges the constitutionality

of his conviction in the case of *State v. Bradford*, Cuyahoga County Court of Common Pleas

Case No. CR-15-600941-A. Petitioner filed his Petition for a Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254.[1] (R. 1). Warden Brandeshawn Harris (Respondent) has filed an

Answer/Return of Writ. (R. 9). Petitioner has filed a Traverse (R. 12), to which Respondent did

not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule

72.2. For reasons set forth in detail below, it is recommended that the habeas petition be

DENIED.

## I.  Summary of Facts

Factual determinations made by state courts are presumed correct in a habeas corpus

---

[1] Although Petitioner is now represented by counsel, both the petition and the traverse were filed
*pro se* by Bradford prior to counsel entering an appearance. (R. 13).

proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C.

§ 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Eighth District Court of Appeals (hereinafter "state appellate court") summarized the facts

underlying Bradford's conviction as follows:

> [*P2] This case arose out of a conflict between two Cleveland gangs, the Fleet
> Avenue and Broadway Avenue gangs, that came to a head in the spring and
> summer of 2015. In April 2015, two members of the Fleet gang were shot at a
> local bar. On May 4, 2015, a shooting against Broadway members injured
> Antowine Palmer and killed Pedro "Dro" Barnes ("Dro Barnes"). The May 4
> shooting occurred outside of 5010 Finn Avenue. After those shootings, multiple
> retaliatory shootings occurred in May, June, and July 2015, including the June 20,
> 2015 shooting death of Fleet gang member Arthur "Archie" Davis.

> [*P3] This appeal involves a drive-by shooting on Scovill Avenue on June 13 and a
> drive-by shooting at 5010 Finn Avenue on July 5; both incidents took place in
> the city of Cleveland. Bradford was not convicted of any charges with relation to
> the June 13 incident; therefore, the discussion that follows will focus mainly on
> the July 5 shooting.

> [*P4] Bradford was charged in a 50-count indictment along with his brothers,
> Maurice Bradford and Lawrence Black ("Black"); their mother, Edwina Neal
> ("Neal"); and alleged fellow gang member Andre Ingram. Neal and Ingram
> entered into plea agreements with the state and the three brothers elected to
> proceed to trial before the bench.

> [*P5] At the end of the state's case, the state dismissed Counts 31-34 and 36 as
> they related to Bradford. The court found Bradford guilty of participating in a
> criminal gang; felonious assault, with a criminal gang activity, one-and three-year
> firearm, and forfeiture specifications; improperly handling a firearm in a motor
> vehicle with one-and three-year firearm and forfeiture specifications; improperly
> discharging a firearm into a habitation with criminal gang activity, one-and three-
> year firearm, and forfeiture specifications; discharging a firearm on or near
> prohibited premises with one-and three-year firearm specifications; and having
> weapons while under disability. The court sentenced Bradford to a total of 14
> years in prison.[2]

---

[2] The court will set forth the remaining relevant facts in its analysis of Petitioner's sufficiency of
the evidence claim.

*State v. Bradford*, 2017 Ohio App. LEXIS 4878, 2017 WL 51924012017-Ohio-8481, ¶¶ 2-5 (Ohio Ct. App. Nov. 9, 2017).

## II. Procedural History[3]

### A.    Conviction

During its September of 2015 term, a Cuyahoga County Grand Jury returned a 50-count indictment against Petitioner and his co-defendants. (R. 9-1, PageID# 56-100; Exh. 1). Petitioner was indicted on 34 of those counts—specifically one count of participating in a criminal gang; sixteen counts of felonious assault; three counts of improperly discharging into habitation; two counts of discharge of firearm on or near prohibited premises; six counts of improperly discharging firearms in a motor vehicle; three counts of having weapons under disability; one count of carrying a concealed weapon; and two counts of vandalism. *Id*. Petitioner, through counsel, entered a plea of not guilty to all counts. (R, 9-1, PageID# 101; Exh. 2).

On September 14, 2016, Petitioner waived his right to a trial by jury. (R. 9-1, PageID# 102; Exh. 3). After the State presented its case at trial, Petitioner moved for an acquittal pursuant to Ohio Crim. Rule 29, which the court overruled. (R. 9-1, PageID# 103; Exh. 4). On September 29, 2016, the court found Petitioner guilty of criminal gang activity as charged in Count 1; guilty of felonious assault with specifications as charged in Count 38; guilty of two counts of improperly handling firearms in a motor vehicle with specifications as charged in Counts 39 and 40; guilty of one count of improper discharging firearm at or into habitation or school with specifications as charged in Count 41; guilty of one count of discharge of firearm on or near

---

[3] Petitioner's traverse expressly states that he "does not dispute the Factual Background, nor the recitation of Bradford's State Conviction, Direct Appeal, Petition to Vacate or Set Aside Sentence, or Resentencing, as provided by the Respondent." (R. 12, PageID# 1901). As such, the procedural history is largely gleaned from Respondent's Return of Writ.

prohibited premises with specifications as charged in Count 42; and, guilty of one count of

having weapons under disability as charged in Count 44. (R. 9-1, PageID# 104; Exh. 5).

On November 15, 2016, Petitioner was sentenced to an aggregate prison term of fourteen

years. (R. 9-1, PageID# 106-109; Exhs. 6 & 7).

**B.    Direct Appeal**

Petitioner, through new counsel, filed a Notice of Appeal with the state appellate court. (R.

9-1, PageID# 110; Exh. 8). Petitioner raised the following assignments of error:

1.    Appellant has been deprived of his liberty without due process of law by
his convictions for participating in a criminal gang,  improperly handling
firearms in a motor vehicle, improperly discharging into habitation, a
criminal gang activity specification and firearm specifications which were
not supported by sufficient evidence to prove his guilt beyond a
reasonable doubt.

2.    Appellant's convictions were against the manifest weight of the evidence.

3.    The trial court erred in ordering a consecutive sentence for the firearm
specifications in counts 40 and 41.

(R. 9-1, PageID# 119; Exh. 9). On November 9, 2017, the state appellate court affirmed in part

and reversed in part. (R. 9-1, PageID# 176-194; Exh. 11). Specifically, the state appellate court

overruled the first two assignments of error, but sustained the third assignment of error and

remanded for a limited resentencing hearing. *Id.*

On December 18, 2017, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme

Court. (R. 9-1, PageID# 195; Exh. 12). His memorandum in support of jurisdiction raised the

following propositions of law:

I.    Bradford's convictions for participating in a criminal gang, improperly
handling firearms in a motor vehicle, and improperly discharging into a
habitation, along with any criminal gang and firearm specifications, were
not supported by sufficient evidence to prove his guilt beyond a
reasonable doubt; and the convictions violated his due process protections

under the Fifth and Fourteenth Amendments to the U.S. Constitution and
Article I, Section § 10 under the Ohio Constitution.

II.     Bradford's convictions were against the manifest weight of the evidence,
in violation of his due process protections under the Fourteen Amendment
to the U.S. Constitution and Article I, Section § 10 under the Ohio
Constitution.

(R. 9-1, PageID# 198; Exh. 13). On April 25, 2018, the Ohio Supreme Court declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 9-1, PageID# 228; Exh. 15).

**C.     Rule 26(B) Application to Reopen the Appeal**

While his direct appeal was pending, on January 23, 2018, Petitioner filed an application to

reopen his appeal pursuant to Ohio App. R. 26(B). (R. 9-1, PageID# 256; Exh. 23). Bradford

claimed appellate counsel was ineffective for failing to raise the following assignments of error:

(1) the three-year and five-year firearm specifications in Count 41 should have been merged at

sentencing, as counsel had argued with respect to Count 40; (2) counsel should have included

additional facts and issues that would have increased the likelihood of prevailing on appeal with

respect to the sufficiency of the evidence and manifest weight of the evidence claims. (R. 9-1,

PageID# 260-265; Exh. 23). On April 6, 2018, the state appellate court denied Bradford's

application to reopen. (R. 9-1, PageID# 275-278; Exh 25).

On April 19, 2018, Bradford filed an application for reconsideration of the court's denial of

his application to reopen his appeal pursuant to App. R. 26(A). (R. 9-1, PageID# 279-281; Exh.

26). Bradford asserted that the state appellate court failed to state a reason for denying his second

assignment of error in his application to reopen the appeal. *Id*. On April 26, 2018, the state

appellate court denied Bradford's motion for reconsideration, indicating that Ohio App. R. 26(A)

is inapplicable to Ohio App. R. 26(B) applications. (R. 9-1, PageID# 282; Exh. 27).

On May 25, 2018, Bradford, *pro se*, filed an appeal from the state appellate court's April

26, 2018 denial of his motion for reconsideration with the Ohio Supreme Court. (R. 9-1, PageID# 283; Exh. 28). In his memorandum in support of jurisdiction, Bradford asserted the following propositions of law:

> I. The Eighth District Court of Appeals erred in denying Bradford's App. R. 26(A) Application for Reconsideration, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> II. The Eighth District Court of Appeals failed to adjudicate the second assignment of error raised in Bradford's App. R. 26(B) Application for Reopening, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> III. Bradford's convictions for improperly discharging a firearm into a habitation, felonious assault, improperly handling a weapon in a motor vehicle, and discharging a firearm on or near prohibited premises were against the sufficiency and manifest weight of evidence, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(R. 9-1, PageID# 285-300; Exh. 29). On July 11, 2018, the Ohio Supreme Court declined to accept jurisdiction of this appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

**D.  Post-Conviction Petitions**

On December 8, 2017, while his direct appeal remained pending, Bradford, *pro se*, filed a petition to vacate or set aside his judgment of conviction or sentence and requested leave to pursue discovery. (R. 9-1, PageID# 229-234; Exh. 16). Bradford asserted that he received ineffective assistance of trial counsel when counsel failed to: (1) call a number of witnesses who allegedly would have offered exculpatory testimony; (2) seek a severance of his trial from co-defendants; (3) ask questions submitted by Petitioner to his counsel to be asked on cross-examination of three witnesses; and (4) present a plea offered by the State weeks earlier until the day of trial. *Id*. Petitioner did not attach any evidence supporting his claims, stating he needed

the aid of an attorney or investigator to do so. *Id*. On March 25, 2019, Bradford filed a motion to proceed to judgment, advising the court that his petition had been pending since December 8, 2017. (R. 9-1, PageID# 251). On March 28, 2019, the trial court denied Bradford's post-conviction petition without a hearing, and also denied the motion to proceed to judgment as moot. (R. 9-1, PageID# 252; Exh. 20). On April 22, 2019, Bradford filed a motion requesting findings of fact and conclusions of law, which the trial court denied on April 24, 2019. (R. 9-1, PageID# 253-255; Exhs. 21 & 22). Respondents contends that Petitioner never appealed the trial court's denial of his post-conviction petition.

**E.    Resentencing**

On January 25, 2018, pursuant to the state appellate court's remand order, the trial court held a resentencing hearing, and resentenced Bradford to serve an aggregate sentence of eleven years. (R. 9-1, PageID# 304; Exh. 32).

On February 16, 2018, Bradford, through new counsel, filed an appeal from the resentencing with the state appellate court. (R. 9-1, PageID# 305-306; Exh. 33). Counsel proceeded to file a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) indicating his belief that continuing to litigate the appeal would be wholly frivolous. (R. 9-1, PageID# 315; Exh. 34). On December 6, 2018, the state appellate court dismissed the appeal. (R. 9-1, PageID# 326-332; Exh. 36). Respondent maintains that Bradford did not file an appeal this ruling, and Petitioner has not challenged the Respondent's rendition of the procedural history of this case.

**F.    Federal Habeas Petition**

On April 12, 2019, Bradford, *pro se*, filed the instant petition for a writ of habeas corpus asserting the following ground for relief:

    **GROUND ONE**: Petitioner's convictions for improperly handling firearms in a

motor vehicle, and improperly discharging into a habitation, along with any firearm specifications, were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt; and the convictions violated his due process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

*Supporting Facts*: Based upon the evidence presented during trial, there was only one witness that remotely inferred that I may have been the driver of the vehicle from which shots were fired from the rear, passenger's side window. The only possible theory of guilt that could have been used to find me guilty would be my complicity in the offenses of improperly handling firearms in a motor vehicle and improperly discharging into a habitation. I was not indicted for aiding and abetting the offenses, nor was the jury ever instructed that it could find me guilty of aiding and abetting. Thus I was impossibly found guilty specifically as a principle offender.

### III. Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003),

---

*v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

*abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough; a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**Application to Ground One**

Although Respondent has not raised the defense of procedural default, the sufficiency of the

10

evidence claim Petitioner presents in this habeas petition is markedly different than the argument Bradford raised before the state appellate court on direct appeal. "Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). The Sixth Circuit Court of Appeals has recently observed that "a federal court may raise a procedural default defense *sua sponte* even if the defense is waived by the warden," further noting that "[r]easonable jurists would not debate otherwise." *Raglin v. Shoop*, No. 19-3361, 2020 U.S. App. LEXIS 21035, at *7 (6th Cir. July 7, 2020) (citing *Lovins*, 712 F.3d at 295 ("even if the State does waive a procedural default defense, we may raise it *sua sponte*.")). The court, therefore, will consider whether Petitioner's claim is procedurally defaulted; and, in the interest of judicial economy and justice, will also consider the merits of this claim.

Herein, Bradford asserts that his convictions for improperly handling firearms in a motor vehicle and improperly discharging into a habitation—along with any accompanying firearm specifications—were not supported by sufficient evidence because he "was not indicted for aiding and abetting the offenses, nor was the jury ever instructed that it could find me guilty of aiding and abetting. Thus I was impossibly found guilty specifically as a principle offender." (R. 1). Although Bradford raised a sufficiency of the evidence claim on direct appeal, much of his argument was devoted to arguing that there was insufficient evidence to support his conviction for participating in a gang—a conviction he does not challenge in the habeas petition. (R. 9-1, PageID# 202-203; Exh. 13). Though his state court brief also challenged the sufficiency of the evidence supporting the two convictions he challenges in ground one, his appellate brief on direct appeal is entirely bereft of any argument suggesting that the court found him guilty as a

11

principal offender, or that the evidence was incapable of establishing his guilt *as a principal offender*. *Id*. Because Petitioner did not raise any such principal offender argument on direct appeal, the state appellate court's decision naturally contains no discussion of it.[4]

The court finds Bradford's sufficiency of the evidence argument, as specifically related to being convicted as a principal offender, to be procedurally defaulted as it could have been raised on direct appeal. The Sixth Circuit has held that proper exhaustion of a claim requires presenting the claim in state court under the same theory in which it is later presented in federal court. *See Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (holding that "the exhaustion doctrine requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review") (*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *accord Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)); *Zich v. Haviland*, No. 3:18CV02515, 2020 WL 7684940, at *25 (N.D. Ohio Apr. 30, 2020), *report and recommendation adopted*, 2020 WL 7237289 (N.D. Ohio Dec. 9, 2020) (Gwin, J.).

Any claims that Bradford could have asserted in his direct appeal, but did not, are defaulted under the well-established doctrine of *res judicata*. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001); *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106

---

[4] Petitioner argued in his Ohio App. R. 26(B) application to reopen his appeal that *appellate counsel was ineffective* for failing to raise an argument similar to the one he now advances, but the habeas petition does not purport to raise any claims of ineffective assistance of appellate counsel. Although *pro se* pleadings must be liberally construed and, at times, require active interpretation, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), these principles are not without limits and do *not* transform the court into an advocate seeking to conjure the strongest and most successful arguments. *See, e.g., Erwin v. Edwards*, 22 Fed. App'x 579, 580 (6th Cir. 2001); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

(1967) (syllabus, ¶9). Bradford cannot return to state court to exhaust the claims because the

Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal

(and were not) will be barred from consideration on appeal following remand, under the doctrine

of *res judicata*. *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v.*

*Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998).

Because Ohio law would not permit Bradford to raise this particular claim, it is defaulted. *See*

*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("In Ohio, a petitioner is not entitled to

raise claims in post-conviction proceedings where those claims could have been raised on direct

appeal."); *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) ("In circumstances

where the petitioner has failed to present a claim in state court, a habeas court may deem that

claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.")

Therefore, because Bradford failed to present the same claim under the same theory that he now

advances, on direct appeal in state court, that claim has been procedurally defaulted because

Ohio courts would no longer consider it.

 The court is aware that Petitioner has not had the opportunity to specifically address the

issue of procedural default, as it is being raised by the court *sua sponte*. Petitioner, however,

retains the ability to file objections to this report and recommendation, and may present further

argument that he properly exhausted the claim contained in ground one—as opposed to the

separate claim of ineffective assistance of appellate counsel referenced *supra* in footnote 4.

Petitioner will also have the opportunity to argue his default should be excused if he can

establish both cause and prejudice.

 In addition, in the interests of justice, the court will address the merits of Petitioner's

13

sufficiency of the evidence claim to the extent it attempts to raise the same arguments actually raised below on direct appeal.

## IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision

involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal district court, however, may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**Ground One: Sufficiency of the Evidence**

In his sole ground for habeas relief, Petitioner asserts that his convictions for improperly handling firearms in a motor vehicle and improperly discharging a firearm into a habitation (along with any firearm specifications) were not supported by sufficient evidence. (R. 1).

In addressing a sufficiency of the evidence claim, the United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) (emphasis in original). "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the

15

credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

The state appellate court addressed this argument as follows:

[*P8] In his first and second assignments of error, Bradford contends that the trial court erred in denying his Crim.R. 29 motion for acquittal and that his convictions for participating in a criminal gang, improperly handling firearms in a motor vehicle, improperly discharging into a habitation, a criminal gang specification

16

and firearm specifications lacked sufficient evidence and were against the manifest weight of the evidence. Although they involve different standards of review, because they involve interrelated issues, many of the same arguments and a review of the same evidence, we address Bradford's first and second assignments of error together.

[*P9] A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶13. Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the evidence challenge. *Id*.

[*P10] A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, *quoting State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; Jenks at paragraph two of the syllabus.

[*P11] Bradford argues that there was insufficient evidence to support his convictions for improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), and improperly discharging into a habitation, in violation of R.C. 2923.161(A)(1), because the state did not identify Bradford as the assailant during the July 5, 2015 drive-by shooting on Finn Avenue.

\*\*\*

[*P13] The crux of Bradford's argument is that the state failed to present direct evidence demonstrating that he had participated in the crimes. This contention, however, ignores the general rule in Ohio that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus. "The lack of direct evidence is not dispositive." *State v. Ladson*, 8th Dist. Cuyahoga No. 104642, 2017-Ohio-7715, ¶ 13. While there may not have been overwhelming direct evidence of Bradford's participation, there was a significant amount of circumstantial evidence linking him to the crimes with which he was charged.

[*P14] Ashley Palmer ("Palmer"), Antwoine Palmer's sister, testified that she grew up with the Bradfords and used to date Bradley Bradford. She was standing outside 5010 Finn Avenue on July 5, 2015, when a black truck pulled up. Palmer recognized the black truck because she had seen the truck parked outside of the house belonging to the Bradfords' mother, Neal. The occupants started shooting at her and the other people in front of the house. Palmer recognized Lawrence Black ["Black"], who, according to Palmer, was "hanging" out of the passenger car window shooting with a "longer gun." Other men in the SUV were shooting out of the back of the vehicle. Palmer "thought" the driver "looked" like Bradford.

[*P15] Fred Booker ("Booker"), a former Fleet gang member, testified that he knew Bradford and his brothers. He knew Bradford was a drug dealer who sold heroin; in fact, according to Booker, Bradford used to sell heroin to the Broadway gang before the "beef" started between the two gangs. Booker explained that a "beef" was:

> Booker: A feud like. Like they trying to hurt us, we trying to hurt them.
>
> State: And so during this time period, if you saw somebody from Broadway—
>
> Booker: I was shooting at them.
>
> State: And what would they be doing?
>
> Booker: Shooting at us.

(Tr. 591.)

[*P16] Booker testified that after Dro Barnes was murdered, Maurice Bradford was shot in a drive-by shooting by suspected Broadway gang members. Black was present during that shooting and used his "AK" to shoot back at the shooter. Four Fleet members, including Bradford and Black, had chipped in money to buy the "AK," but Booker had only seen Black shoot the gun.

[*P17] Shortly after Maurice was shot, the Bradfords' house was shot at, allegedly by Broadway gang members. Booker testified that he and Bradley talked about retaliating against Broadway for the various shootings. Booker named the various Fleet members he was associated with: Maurice, Black, Bradley, K.O., Tru, Chip, Mondo, Gerald, Bally (Andre Ingram), and Archie (deceased).

[*P18] According to Booker, on July 5, 2015, Black and Bradford picked him up in Neal's SUV shortly after the Finn Avenue shooting. Bradford was driving and

Black was sitting in the front passenger seat. Black and Bradford told Booker they shot up a house in the Broadway neighborhood to retaliate for Archie's murder. According to Booker, both Bradley and Black had handguns "[o]n the[ir] persons" and the shooting took place "[p]robably like a little bit before" the brothers picked him up. He testified that the group headed back to the Broadway area, looking for more Broadway members to shoot at. When the group did not see anyone, they decided to take a picture in front of a street sign and post it online to taunt the Broadway gang.

[*P19] About an hour after the shooting, Bradford uploaded a photo to his Instagram account that showed Black, Booker, and two other men under a Broadway-area street sign. Bradford was not in the picture. Booker explained that Bradford was not in the picture because he was driving the SUV and had to remain in the vehicle in case the group was spotted and needed to make a quick getaway.

[*P20] Approximately six hours after the shooting, Cleveland Police pulled over Neal's SUV in response to a call for a radio assignment that "people were loading a firearm or firearms into a black SUV to possibly be doing a retaliation shooting." At this point, Neal was driving, Black was sitting in the front passenger seat, and Bradford was in the back seat. Police found a .40 caliber firearm in the glove compartment that matched cartridge casings recovered from the scene of the Finn Avenue shooting.

[*P21] In August 2015, according to Booker, Bradley Bradford was shot, allegedly by the Broadway gang, and Neal asked him (Booker) to go to her house and retrieve the "AK." Booker went to the house but the police were already there searching the house so he was unable to get the gun.

[*P22] There was also ample evidence presented at trial that Bradford was part of the Fleet Avenue gang. We recognize that "nominal or passive association" with a gang is not enough to prove active gang membership. *State v. King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574, ¶ 15, citing *State v. Hairston*, 9th Dist. Summit Nos. 23663 and 23680, 2008-Ohio-891, ¶18. In this case, numerous witnesses testified about the "beef" between the Fleet and Broadway gangs that dated back to the spring of 2015. Booker testified that he was at the Bradfords' house on June 6, 2015, with Black and Maurice Bradford when someone shot up the house.

[*P23] The day after the shooting Booker and Black discussed retaliating against the Broadway gang because they believed the Broadway gang was responsible for the shooting. Palmer testified she recognized Black from the Finn Avenue shooting and "thought" the driver looked liked Bradford.

[*P24] Booker testified that Bradford and Black picked him up after the Finn Avenue shooting and told him that they had committed that crime to retaliate against the Broadway gang. Booker then returned with Bradford, Black, and two other Fleet gang members to the Broadway area to look for Broadway gang members to shoot. They were not able to find anyone so the men took a picture of themselves in front of a Broadway-area street sign. Bradford posted the picture to his Instagram account. The state presented other evidence of Bradford's Instagram posts, in which Bradford commented on other known gang members' postings or posted pictures of himself where other known gang members post. Bradford also posted a picture of his young son throwing the Fleet gang symbol, a picture of himself with other known gang members and a caption that referenced the Fleet gang, and various pictures of himself holding firearms, including one with a caption that referenced deceased gang member Archie Davis.

[*P26] Detective Al Johnson ("Detective Johnson") with the Cleveland Police Gang Impact Unit testified that, based on his training and experience, Bradford was affiliated with the Fleet Avenue and Click Goons gangs. Detective Johnson explained that although both of those gangs were subsets of the Heartless Felons, Bradford was not a member of the Heartless Felons. He explained that the Heartless Felons served as an umbrella organization and not all Fleet Avenue gang members belonged to the Heartless Felons. Detective Johnson was convinced that Bradford was a Fleet gang member even though the state had not produced any pictures of Bradford himself throwing gang symbols.

[*P27] In light of the above, we find that the state offered compelling direct and circumstantial evidence to show that Bradford's constant presence with gang members proved that his relation to them was more than a mere "association." Bradford's constant presence in the company of other gang members, and in particular his involvement in skirmishes with the rival Broadway gangs, could cause a rational trier of fact to conclude that his involvement with the Fleet Avenue gang went beyond passive association and amounted to active membership in the gang. To find otherwise would be to ignore the obvious circumstantial evidence. *See King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574, at ¶22. In addition, a reasonable trier of fact could infer that Bradford was the driver involved in the Finn Avenue shooting; the state presented sufficient evidence of Bradford's guilt when all the evidence is considered as a whole.

*** 

[*P33] Moreover, the court did not rely just on the testimony of Palmer and Booker. The testimony of these two witnesses was corroborated by the other witnesses. Firearms examiner Kristen Koeth ("Koeth") and Cleveland Police Detective William Tinsely ("Detective Tinsely") testified that police recovered three types of spent cartridge shells at the scene of the Finn Avenue shooting: (1)

20

five 9 mm casings, (2) three .40-caliber cartridge casings, and (3) one 7.62 x 39 mm casing that is used in an AK-47 type rifle.

[*P34] Koeth testified that the .40-caliber casings recovered at the scene were fired by the .40-caliber handgun the police found in Neal's black SUV hours after the shooting. As mentioned, Neal was driving the car, and Black and Bradford were in the vehicle. Detective Tinsley testified that the 7.62 casing was from an "assault weapon," which was never recovered but matches the description of the "long gun" Palmer testified Black was holding during the Finn Avenue shooting.

[*P35] In light of the witnesses' testimony and the circumstantial evidence that links Bradford to the crimes, the evidence does not weigh heavily against conviction and there was sufficient evidence to convict Bradford. Therefore, the first and second assignments of error are overruled.

*Bradford*, 2017-Ohio-8481 at ¶¶8-35 (footnotes omitted).

The state appellate court identified and applied the correct standard of review. This court has reviewed pertinent portions of the trial transcript, which corroborates the state court's rendition of events. For example, witness Ashley Palmer recognized the black truck in question as a vehicle she had seen parked in the driveway of Petitioner's family, and that the driver looked like Petitioner. (R. 9-4, PageID# 840; Tr. 471). Witness Fred Booker testified that after the shooting, Petitioner drove up to where he was hanging out with friends and began telling him about the shooting. (R. 9-5, PageID# 1006; Tr. 636). Booker testified that Petitioner admitted to having retaliated against their rivals by "shooting up" a house. (*Id*. at Tr. 637-638). Booker testified that he saw a handgun on Petitioner's person. *Id*. Finally, Booker further testified that Petitioner told him that Petitioner was the driver during the shooting. (*Id*. at Tr. 640). Given the "double deference" owed to the state court's determination, this court cannot find anything unreasonable with respect to the state court's determination that a rational trier of fact, in this case the judge presiding over the bench trial, could have credited the testimony of the witnesses,

21

and found Petitioner was guilty of the convicted offenses under an accomplice or complicity theory.

Finally, although the court recommends finding Petitioner's claim that he was found guilty as a primary offender to be defaulted, there appears to be little merit to the claim. Without going into an exhaustive analysis, Petitioner concedes in the traverse that he "does not contend that it was necessary for him to have been charged as an aider and abettor in order for him to have been found guilty of complicity." (R. 12, PageID# 1903). Rather, the essence of his argument is that he was not expressly found guilty as an aider and abettor in the judge's verdict, while the judge did note Petitioner's co-defendant was guilty under a theory of complicity. (R. 12, PageID# 1905-1906). Therefore, Petitioner makes the assumption that the judge *must* have found him guilty as a principal offender.

This court, however, is unconvinced that Petitioner's assumption—that the trial judge found him guilty as a principal offender—is correct. Moreover, Petitioner identifies no authority that requires a judge, who is serving as the factfinder during a bench trial, to specifically state whether a defendant has been found guilty as a principal offender or as an accomplice.

Under Ohio law, an individual "who aids and abets another in committing an offense is guilty of the crime of complicity, and may be prosecuted and punished as if he were the principal offender." *State v. Graven*, 369 N.E.2d 1205, 52 Ohio St.2d 112, 115 (Ohio 1977); *see also* O.R.C. § 2923.03(B) ("It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.") Thus, the finder-of-fact was not required to delineate which individual(s) acted as the principal offender and which individual(s) were the aiders and abettors. To put it more succinctly, the state court's finding that there was sufficient evidence to support Petitioner's convictions under a theory of complicity, a

finding which was neither contrary to nor an unreasonable application of clearly established federal law, renders it moot whether the same evidence could have supported a finding of guilt as a principal offender.

For the reasons stated, the court recommends finding Petitioner's sole ground for relief to be without merit.

### V. Conclusion

It is recommended that Bradford's Petition be DENIED for the foregoing reasons. As explained herein, it is recommended that the court either *sua sponte* determine that Petitioner procedurally defaulted the sole ground for relief presented in the Petition or, in the alternative, upon considering the merits of that claim find that it is without merit.

/s/ David A. Ruiz_____
U.S. MAGISTRATE JUDGE

Date: February 25, 2021

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).